MERRILL F. KEVERN

*v.*

THE PEOPLE OF THE STATE OF ILLINOIS.

*Opinion filed December 22, 1906.*

1. EVIDENCE—*when the entire conversation is not admissible in proving disserving statement.* In a prosecution for rape, where it is sought to prove by the father of the girl that the defendant made an alleged disserving statement to the effect that he could not give the girl anything because he had nothing, it is not proper, unless called out on cross-examination, to permit the witness to detail the whole conversation in which he repeated the girl's statements as to the transaction and the language he used to the defendant in characterizing his conduct. (*Gannon* v. *People,* 127 Ill. 507, distinguished.)

2. RAPE—*birth of child raises no presumption as to defendant's guilt.* The fact that a child may have been born to the prosecutrix some six months after the alleged rape was committed does not raise any presumption as to the guilt of the defendant, even though it be regarded as raising a presumption that he had had sexual intercourse with the girl before the time of the alleged rape, since a presumption cannot be based upon a presumption.

3. SAME—*when instructions as to circumstantial evidence are misleading.* In a prosecution for rape, where the only controverted question is whether sexual intercourse took place between the prosecutrix and the defendant at the particular time and place alleged in the indictment, and there is no evidence of that fact except the testimony of the prosecutrix, which is controverted by other witnesses, nor any circumstances corroborating her testimony, it is error to give instructions to the effect that acts constituting a crime may be proved by circumstantial evidence.

HAND, VICKERS and CARTER, JJ., dissenting.

WRIT OF ERROR to the Circuit Court of Stephenson county; the Hon. OSCAR E. HEARD, Judge, presiding.

Merrill F. Kevern, plaintiff in error, was twice indicted at the June term, 1906, of the circuit court of Stephenson county. Each indictment charged him with the crime of rape upon one Ida Nickel, a girl fifteen years of age at the time of the alleged offenses. The case at bar was tried at that term, a verdict of guilty returned, and the jury fixed the punishment at one year in the penitentiary. After a motion for a new trial and a motion in arrest of judgment were overruled judgment was rendered on the verdict. Kevern sues out this writ seeking a reversal.

The offense charged by the present indictment is alleged to have been committed at the farm-house in which plaintiff in error resided, about one and one-half miles east of the village of Waddams Grove, in Stephenson county, on October 25, 1905. Kevern was a farmer, a man of family, thirty-one years of age, and according to the undisputed testimony offered in his behalf had previously borne a good reputation for chastity. The prosecutrix resided at the home of her parents, on a farm a short distance from Kevern's place, and at the time of the commission of the alleged offense she was employed by him as a domestic.

The prosecutrix stated that she became sixteen years of age on the 10th day of May, 1906. She had worked for Kevern at several different times, and testified that she be-

gan service for him the last time in October, 1905; that on the night of October 24 she slept in a bed-room south of the room in which plaintiff in error and his family slept; that about midnight she discovered that Kevern was in bed with her, which was the first knowledge she had that he was in the room; that he there by force compelled her to yield to his embraces; that she resisted, but he overcome her; that his wife was in a bed about twenty-four feet away, in another room; that the act was committed in the night of October 24, and not at an earlier or a later date. At this time the prosecutrix was with child and had been in that condition about three months. She continued to work at the Kevern residence until the end of that week, as she says, when she was discharged. Prosecutrix told her brother of the occurrence several days later, and made no other or further complaints to any one until the following January, when she told her sister, who in turn informed their father. The prosecution did not attempt to maintain the indictment on the theory that the crime was accomplished by force, but relied on the fact that the prosecutrix had not reached the age of consent.

The plaintiff in error, who was a witness in his own behalf, denies that he had sexual intercourse with the prosecutrix on the night of the 24th of October, 1905, or at any other time. He testifies that on Monday, October 23, 1905, and during all the following days of that week, Ed Tucker and Charley Coomber were working for him; that Tucker slept in the south room, where the rape is alleged to have been committed, each night during the time he was so employed, and that the prosecutrix was not there that week at all but worked for him the next week. Tucker corroborates Kevern in the statement that he (Tucker) slept in the room each night beginning with October 23, 1905, and ending with the week, and Tucker states that he did not see prosecutrix at Kevern's house during that time. The testimony of Coomber is to the effect that he and Tucker worked

at Kevern's the latter part of October, but he cannot definitely fix the dates.

It is urged, among other grounds for reversal, that the court erred in passing on objections to testimony and in passing on the instructions.

R. R. TIFFANY, for plaintiff in error.

W. H. STEAD, Attorney General, and LOUIS H. BURRELL, State's Attorney, for the People.

Mr. CHIEF JUSTICE SCOTT delivered the opinion of the court:

The People charge the crime to have been committed in a room in Kevern's residence on the night of October 24, 1905. The charge rests solely upon the evidence of the prosecutrix, which is emphatically denied by Kevern, who testified that he never at any time had sexual intercourse with her. She swears positively that the offense was perpetrated on that night. It seems reasonably certain from this record that Ida Nickel was not in this house on that night, the preceding night nor for several nights thereafter, and that if this crime was committed in a room therein, as she says it was, it occurred at a date several days, probably a week, later than October 24.

The girl's father was a witness to prove a statement of Kevern which the People regard as disserving, made in a conversation with the father in February, 1906, in these words: "I can't give the girl anything; I haven't got anything." This witness, the father, however, in response to interrogatories propounded by the court, was permitted to relate the entire conversation between himself and Kevern, in which he says he repeated to Kevern his daughter's statement to the witness charging the plaintiff in error with the crime, and the witness was also permitted to repeat the language which he used in the conversation with Kevern characterizing the alleged conduct of the latter. It was

not proper to have the father repeat the statements of the prosecutrix as a preliminary to proof of the alleged disserving statement. He could have been asked if he, in substance, charged Kevern with having committed the crime or with having had sexual intercourse with the daughter, and if he answered in the affirmative he could then have been asked whether Kevern made response, and, if so, what the response was. Proof of the repetition of the girl's statements by the father in the conversation would be admissible only if called for on cross-examination. The jury were apt to regard the repetition of the girl's charges against Kevern as original substantive evidence tending to prove the averments of the indictment, and for that reason the court erred in eliciting that repetition. (*Stevens* v. *People,* 158 Ill. 111.) It was not necessary here, as it was in *Gannon* v. *People,* 127 Ill. 507, to make proof of the exact words addressed to the accused for the purpose of enabling the jury to fully understand the significance of the language used by him.

It appears from a colloquy which took place between the court and counsel during the trial that there was at that time another indictment pending against Kevern charging him with having committed the same crime upon the person of this girl in July, 1905. The girl testified that prior to the commission of the act charged by the indictment now before us, a like offense had twice been committed by Kevern,—once in July, 1905, and once in August, 1905,—and that on October 24, 1905, she had been with child for about three months. Kevern urges that this testimony was incompetent; but he cannot successfully raise this question because he elicited the substance of this evidence himself in cross-examination. On re-direct, however, the prosecutor asked the witness, "Do you know who the father of the child is?" and objection was sustained, and then he asked, "Is that the same child you are holding in your arms that you were carrying at that time?" To this question an objection was also sustained, but it is apparent that the im-

pression was thereby conveyed to the jury that the prose-cutrix was the mother of a child which she then held in her arms, begotten at about the time of the first offense mentioned in her testimony.

The court gave two instructions on the part of the People to the effect that "the acts constituting the crime may be proved by circumstances."

The only material controverted question was, did sexual intercourse occur between the prosecutrix and Kevern in the room in his house? There is no evidence whatever tending to show that coition actually took place in that room save the direct and positive evidence of Ida Nickel. There was no circumstantial evidence on the subject. The jury, however, guided by the two instructions just mentioned, were apt to reason that the birth of the child was a circumstance from which they might presume there had been sexual commerce between Kevern and this girl in July, and that if they were then criminally intimate her account of the October affair was thereby made more probable,—a conclusion manifestly unjust to plaintiff in error, because the birth of the child, in itself, is not a circumstance tending to show that Kevern was its father. It may have been begotten by another. Even if it could be presumed that the child was his offspring it could not be presumed from such presumed fact that he had intercourse with the prosecutrix at a later date. That would be to base one presumption upon another, which may not legally be done. *Globe Accident Ins. Co.* v. *Gerisch,* 163 Ill. 625; *Condon* v. *Schoenfeld,* 214 id. 226.

As there was no evidence upon which to base them, the giving of the two instructions relative to circumstantial evidence was erroneous. In a somewhat similar condition of the record it was so held in *Cunningham* v. *People,* 210 Ill. 410.

The eighth instruction given at the request of the People, which deals with the law bearing on the weight to be attached to the evidence of the accused, is inaccurate. In

view of other instructions given, however, this would not work a reversal.

There is no occasion to determine whether other errors are well assigned.

The judgment of the circuit court will be reversed and the cause remanded.

*Reversed and remanded.*

Mr. JUSTICE HAND, dissenting:

I do not concur in the conclusion reached in the foregoing opinion. The date testified to by the prosecutrix upon which the intercourse between her and the plaintiff in error took place was not material, and the fact that she may have been mistaken as to the particular night when it took place only bore upon her credibility as a witness, and if she was mistaken in that regard such mistake should not work a reversal of the case.

I also think that the father of the girl was properly permitted to testify that he repeated the charge to the plaintiff in error made against him by his daughter and the reply of the plaintiff in error thereto, as the jury could only get the full force of the reply when advised of the remark of the father which elicited the reply. (*Gannon v. People,* 127 Ill. 507.) The fact the prosecutrix made complaint to her brother that the plaintiff in error had outraged her was a circumstance tending to corroborate her statement that the plaintiff in error was responsible for her condition. Where there is evidence tending to support the theory of a party, he has a right to an instruction presenting to the jury his view of the case. (*Chicago Union Traction Co. v. Browdy,* 206 Ill. 615.) The giving of the instructions referred to in the majority opinion was not, I think, reversible error.

It is far more important that a defendant, clearly proven guilty, be punished than that a record free from technical errors be built up.

VICKERS and CARTER, JJ.: We concur in the foregoing dissenting opinion of Mr. Justice HAND.