(No. 11876.—Reversed and remanded.)

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* GEORGE CASSIDY, Plaintiff in Error.

*Opinion filed April 17, 1918.*

1. CRIMINAL LAW—*when evidence of birth of a child is admissible in prosecution for rape.* Evidence of the birth of a child does not tend to prove a particular person's guilt of the crime of rape unless there are certain hereditary characteristics of an unusual nature reproduced in the child which may tend to show the child's paternity, but where the prosecuting witness is under the age of consent, evidence of the birth of a child proves that a crime was committed and is admissible for that purpose.

2. SAME—*when objection to evidence cannot be urged in the Supreme Court.* Where no objection is made to the introduction of evidence at the time it is offered and there is no motion at any time during the trial to exclude the evidence after its admission, an objection to such evidence cannot be urged in the Supreme Court.

3. SAME—*defendant may refresh his memory by referring to memoranda.* In a prosecution for rape the defendant, who was in the employ of the city during the months the several acts of intercourse were alleged to have taken place and who was required to make a record of his daily employment, should be permitted to refer to the memoranda to refresh his memory as to what he was doing at the time of the alleged acts.

4. SAME—*proof of offer to settle bastardy suit is not admissible.* In a prosecution for rape, evidence that the prosecutrix and her brother called on the defendant and offered to settle with him for a sum of money is not admissible where the offer has reference to the settlement of a bastardy proceeding against him.

5. SAME—*when record of baptism is not admissible to prove the date of birth of prosecutrix.* In a prosecution for rape an unidentified record of the baptism of the prosecutrix by a priest in a foreign country is not admissible to prove the date of her birth; but the error in admitting such record is harmless where the mother of the prosecutrix testifies positively to the date of birth and is not contradicted in any way.

6. SAME—*evidence of several acts of intercourse is admissible in a prosecution for rape.* In a prosecution for rape, evidence of more than one act of intercourse may be testified to by the complaining witness, not for the purpose of showing that different offenses were committed but to show the relation and familiarity of the parties.

7. SAME—*fact of birth of child is not corroborative evidence.*
The fact of the birth of a child to the prosecutrix in a prosecution
for rape cannot be considered as corroborating her testimony as
to her alleged illicit relations with the defendant, and the latter
is entitled to an instruction to that effect.

WRIT OF ERROR to the Criminal Court of Cook county;
the Hon. RICHARD S. TUTHILL, Judge, presiding.

EDGAR A. JONAS, for plaintiff in error.

EDWARD J. BRUNDAGE, Attorney General, MACLAY
HOYNE, State's Attorney, and NOAH C. BAINUM, (EDWARD
E. WILSON, and DANIEL G. RAMSEY, of counsel,) for the
People.

Mr. CHIEF JUSTICE CARTER delivered the opinion of the
court:

Plaintiff in error, George Cassidy, was indicted, tried by
a jury and found guilty of the crime of rape upon Anna
Nadwarna, a girl about fifteen years of age at the time of
the offense, and was sentenced to one year's imprisonment
in the penitentiary. This writ of error has been sued out
to review the proceedings of the trial court.

Cassidy was about twenty-six years of age at the time
of the alleged offense and lived with his mother, brother
and sister in West Pullman, in Cook county. The com-
plaining witness lived a short distance from Cassidy's home
with her mother and family. According to the State's wit-
nesses, Anna worked at the Cassidy home more or less regu-
larly in April, May and June of 1916. Her work was done
mostly after three o'clock, after coming home from school.
Anna testified that she first went to work for Mrs. Cassidy
at her request about 1913; that she did such work as clean-
ing the house, washing and ironing clothes, making beds
and dusting, for which she received five or ten cents a day
and old clothing; that she continued this work during the

years 1913, 1914, 1915, and until June, 1916, sometimes working as late as 8:30 or 9:00 o'clock in the evening.   She testified concerning the acts of plaintiff in error at different times in April or May, but she was not able to remember the exact dates but gave the time of day and the circumstances in some detail.   A baby was born to her January 24, 1917, which lived only about five months.

Complaining witness testified that plaintiff in error had sexual intercourse with her several times against her will; that the first time was about April, 1916; that the mother, Mrs. Cassidy, was away from home at the time; that she told the witness she could find the key of the house in a certain place and to go in and do the housework; that witness came to the house from school shortly after three o'clock and did certain housework and then went into Cassidy's room to clean it up; that he came in when she was finishing and told her to go out, as he was going to bed, and to go and clean the bath-room; that he then called her back and said she could clean his room; that he was lying in bed as she started to mop up the floor; that he then came, being dressed only in a night shirt, and pulled her into bed; that she tried to get away from him by pushing him, but that he held her and had sexual intercourse with her forcibly; that she then went right home and said nothing to anyone and did not go back until Mrs. Cassidy came for her, two or three days later; that the same thing happened two or three weeks later, his mother having then gone to Blue Island or some other near by place, and having left the key, as before, for the complaining witness to find and go into the house to do the work; that on this second occasion she was ironing when plaintiff in error came in and pulled her down on the couch on the first floor; that she started to cry but he compelled her to have sexual intercourse; that two or three weeks later she was making the bed up-stairs; that plaintiff in error came home about 5:30 and pulled her into the bed and had intercourse with her,

having his clothes on that time; that the next time was about two weeks later, when she was on the street coming from her cousin's, past the Illinois Central depot; that plaintiff in error called to her and pulled her into a box-car on a switch track near the depot and had sexual relations with her in the car; that he later had sexual relations with her at his mother's home some time in June. She testified that she never had sexual intercourse with any other person than plaintiff in error.

It appears from the testimony of the complaining witness that she went into the municipal court with Mrs. Laing, who was a representative of the Legal Aid Society, to make complaint against Cassidy, evidently in the nature of a bastardy proceeding for the support of the child. While it was attempted to show by her testimony in the municipal court that her memory as to dates was uncertain, we find no material discrepancy on material points between her testimony given on this trial and that which she gave in the municipal court, as disclosed by her cross-examination, except, possibly, that she was in some doubt as to whether the last act complained of was committed in the box-car or at the home of plaintiff in error.

Plaintiff in error testified in his own behalf and denied the charges, positively and specifically stating that he never got home during the months in question as early as 3:30 or 4:00 o'clock, the hours fixed by complaining witness when most of the offenses occurred. There was also testimony by his mother and two sisters that the complaining witness had never worked about the house doing housework for Mrs. Cassidy; that the most she had ever been employed to do was to run errands on the outside. There is also testimony by these same witnesses that Mrs. Cassidy was sick and confined to the bed most of the time during the months in question, and that she was not, and could not have been on account of her sickness, out of the house on the day testified to by the complaining witness. There

is also testimony somewhat to the same effect as to Mrs. Cassidy's physical condition during the time in question by Dr. Post, that she had bronchial pneumonia and was in bed practically all the time from the middle of April until some time in June; that she was being nursed during all her illness by her married daughter.

William Woodrich, who testified for the People, stated that he lived a block from the Cassidy home, working at the shops near there; that he had seen the complaining witness go to Cassidy's to work frequently on returning from school about four o'clock, and that he had seen her working there sometimes as late as nine o'clock in the evening; that he had seen her pressing clothes at the Cassidy home in May, 1916. Frances Natchus, fifteen years old, testified that she had seen the complaining witness sweeping the Cassidy porch, and had once seen her scrubbing the floor in the kitchen some time from May to August of 1916; that she knew that the complaining witness ran errands for the Cassidys and washed dishes. A brother of the complaining witness testified that he had seen his sister working at the Cassidy's, doing housework. Julia McGrath testified that early in the fall and winter of 1916 the complaining witness helped her at her house with the work and that she helped the girl with her studies; that she had some correspondence with Mrs. Cassidy in regard to keeping the complaining witness out of school to work.

We have stated substantially all of the testimony bearing on the question of the guilt or innocence of plaintiff in error. His counsel argues earnestly that the evidence does not justify the verdict. In criminal cases the weight of the evidence is for the jury, and where they find a defendant guilty this court will not reverse the trial court's judgment unless the testimony is palpably against the weight of the evidence or harmful error in the rulings of the court has taken place on the trial. (*Lathrop* v. *People,* 197 Ill. 169; *Barrett* v. *People,* 220 id. 304; *People* v. *McCann,*

247 id. 130; *People* v. *Barnes,* 270 id. 574.) While the testimony given on the trial is conflicting on material points, reading it as we find it before us in the record, we think it is of such character as to justify the verdict of the jury, but it is also of such a nature that to affirm the judgment the record should be free from substantial error.

Counsel for plaintiff in error argues that it was error to permit the State to prove that the prosecuting witness gave birth to a child and that the child died. The birth of a child does not tend to prove a particular person's guilt in the commission of a crime such as is here in question unless there are certain hereditary characteristics of an unusual nature reproduced in the child which may tend to show the child's paternity, but where the age of the prosecuting witness is proved as being under the age of consent, the birth of a child does prove that a crime was committed and is admissible for that purpose. (*Woodruff* v. *State,* 72 Neb. 815; *State* v. *Robinson,* 32 Ore. 43.) Moreover, there was no objection made to the introduction of the evidence on these points at the time it was offered. Neither does there seem to have been made, at any time during the trial, a motion to exclude this evidence, therefore we think counsel is not in position to raise this point on behalf of plaintiff in error.

In this connection counsel further argues that the court erred in not giving an instruction offered on behalf of plaintiff in error which stated, "that in considering the evidence as to whether or not the testimony of Anna Nadwarna is corroborated as to whether or not the defendant had sexual intercourse with her, the fact that a child was born to her is not a fact to be considered as corroborative on that point." We think this instruction stated a correct principle of law and should have been given. (*State* v. *Blackburn,* 136 Iowa, 743; *Kevern* v. *People,* 224 Ill. 170.) Counsel for the State insist that it is not shown that all the instructions offered on the trial are before this court, and that

therefore it cannot be assumed that there was no other instruction containing the same principle of law given by the trial court. The record, in our judgment, shows clearly that the evidence heard on the trial and all the instructions given are before us, and therefore it must be held that the court committed error in refusing this instruction.

Counsel for plaintiff in error also argues that the court committed error in refusing to allow plaintiff in error to refresh his memory as to what he was doing at the time of the alleged offenses by referring to memoranda which he apparently had kept of his work at these various times. It appears that he was working for the city and had to make a record of his daily employment to the city authorities. We understand that the memoranda had been made by the witness himself. Counsel for plaintiff in error asked that Cassidy might refresh his recollection from the memoranda, so as to testify positively as to what he was doing during the times at which complaining witness had testified these crimes were committed. A witness can testify only to such facts as are within his knowledge and recollection, but he is permitted to refresh or assist his memory by the use of a written memorandum, and it has been held that it is not necessary that the writing should have been made by the witness himself or that it should be an original writing, provided that after inspection of it he can speak of the facts from his own recollection. Neither is it necessary that the writing thus used should be admissible in evidence. (1 Greenleaf on Evidence,—15th ed.—sec. 436; 40 Cyc. 2452; Jones on Evidence,—2d ed.—secs. 877, 878; *Scovill Manf. Co.* v. *Cassidy,* 275 Ill. 462, and authorities there cited.) While Cassidy testified positively that he did not reach home during any of the months in question as early as four o'clock and did not quit his work until five o'clock, we see no reason why he should not have been permitted to refresh his recollection from the memoranda made by himself as to just what he was doing during the months in

question. Of course, if the memoranda had been used for that purpose he would have been subject to cross-examination on the subject, with the opportunity for counsel for the State to examine the memoranda for the purpose of cross-examining him.

Counsel for plaintiff in error also argues that the court erred in refusing to permit proof to be introduced on behalf of plaintiff in error that the complaining witness and her brother called at plaintiff in error's residence in his absence and offered to settle for $800. It appears indirectly from the record,—and counsel on both sides seem to concede it to be a fact,—that bastardy proceedings were begun by the complaining witness against plaintiff in error in the municipal court. Of course, as urged by counsel for the State, the complaining witness had a right, if she chose, to settle with Cassidy for the injury done her, and she might have maintained a civil suit. This being so, the trial court rightly excluded this testimony.

It is further contended that the court committed error in permitting the mother of the complaining witness to introduce as part of her testimony a record of the daughter's baptism by the priest in the old country who baptized her. This record does not seem to have been identified in any way except by Mrs. Nadwarna's testimony that it was given her by the priest. In many countries where the civil law prevails, registers of marriages and births kept by the clergy are received as primary evidence of such facts, but in England and at common law such registries were not admissible unless there was a statute providing that they should be kept for that purpose. In the United States it has frequently been held that such entries are admissible if made in the course of official duty although not required to be made by law, and in some jurisdictions in this country it is held that a baptismal register of a church, in which the entries are made in the ordinary course of a clergyman's business, is admissible to prove the fact and date of baptism

but not the date of birth. (Jones on Evidence,—2d ed.—secs. 510, 511; *Royal Society* v. *McDonald,* 59 N. J. L. 248; 1 Ency. of Evidence, 733, and cases cited.) We think the evidence of the baptism of the complaining witness, which apparently gave the date of her birth, was improperly admitted, but the mother of the complaining witness testified positively as to the date of her birth and it is not contradicted in any way. We therefore think that the error in admitting this record was harmless.

Counsel further argues that the court made improper remarks in the presence of the jury as to the prosecuting witness being only a child. The remark in question was made by the court at the time counsel for plaintiff in error was objecting to the State's attorney prompting the complaining witness by asking her leading questions. The court remarked at that point, "I don't think it is prompting, and this is only a child." Counsel for plaintiff in error then stated, "This girl is no child." The judge then said, "Well, I call her a child." Counsel excepted to this remark of the court and now claims that the remark was prejudicial error. In view of the testimony in this record and the fact that the girl testified before the jury at length, we do not see how it is possible that the plaintiff in error can have been prejudiced in any way by this remark of the court.

The objection of counsel concerning the testimony of Miss McGrath as to her correspondence with Mrs. Cassidy is without merit, if for no other reason than because no objection was made at the time it was offered on the trial.

Counsel further argues that it was error for the trial court to permit evidence of more than one act of intercourse to be testified to by the complaining witness. To this evidence no objection seems to have been made at the time, nor any motion thereafter made to exclude it. Furthermore, such evidence is admissible, not for the purpose of showing, as counsel contends, that other different offenses were committed, but to show the relation and familiarity

of the parties; and this seems to be in accord with the rulings of this court and the weight of authority. *People v. Gray*, 251 Ill. 431, and authorities there cited.

The evidence as to the guilt of the plaintiff in error is of such a nature that it is impossible for us to say that some of the errors committed on the trial did not improperly prejudice the jury against him. For this reason we are compelled to hold that the judgment of the criminal court of Cook county must be reversed and the cause remanded for further proceedings in harmony with the views herein expressed.

*Reversed and remanded.*