(No. 22213.—)

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* JOSEPH FRANCIS, Plaintiff in Error.

*Opinion filed February 23, 1934—Rehearing denied April 10, 1934.*

THADDEUS C. TOUDOR, and I. E. YELOWCIN, for plaintiff in error.

OTTO KERNER, Attorney General, THOMAS J. COURTNEY, State's Attorney, and J. J. NEIGER, (EDWARD E. WILSON, J. ALBERT WOLL, and HENRY E. SEYFARTH, of counsel,) for the People.

Mr. CHIEF JUSTICE ORR delivered the opinion of the court:

On August 2, 1933, Joseph Hartel was shot to death while delivering milk in Chicago. Joseph Francis, aged thirty-five, a negro, was indicted for the crime, tried before a jury, found guilty of murder and sentenced to death by the criminal court of Cook county. A writ of error brings the case here.

The undisputed evidence shows that Hartel, an employee of the Bowman Dairy Company, was accosted by Francis (hereafter called defendant) at about 6:00 A. M. near Forestville avenue and Fiftieth street. Defendant, whose motive was robbery, saw Hartel put some bottles in wire trays and leave his milk wagon. Upon his return defendant walked up to him, stuck a gun against him and said, "Stick them up!" Hartel turned and ran, pursued by his assailant, who finally overtook him, fired a shot into his body at close range and fled. Hartel died the next day as a result of the bullet wound. Three persons close to the scene witnessed the shooting, positively identified defendant and testified without contradiction at his trial. Defendant also testified, admitting the crime but saying it was unintentional and due to the accidental discharge of the gun.

The defendant argues that the judgment is void *ab initio,* in that it does not show the presence of the judge and other necessary court officers and does not contain a recital that the court was open and in session. This does not amount to a denial that the court was properly organized—it is only a claim that the judgment does not contain recitals of that fact. The defendant is in error. The record shows the legal organization of the court on September 21, 1933, the day judgment was rendered. The record need only show that the court was in session on the day in question. (*Yates* v. *People,* 38 Ill. 527; *Lamb* v. *People,* 219 id. 399.) It is clearly disclosed that the court was in session and constituted according to law on Sep-

tember 18, 1933. This was the day of the trial. On this same day argument on the motion for a new trial was continued to September 21, 1933. The record shows that the argument was not made on that day but was, in fact, made on September 22, when motions for a new trial and in arrest of judgment were denied. The People were represented by the State's attorney and defendant was present in person and represented by counsel, Bachrach and Power, when the court entered judgment. The judgment was a proper one, for it correctly named the defendant, found him guilty of the specific crime charged in the indictment and ordered him to be executed according to the applicable statute. (*Lamb* v. *People, supra; Hoch* v. *People,* 219 Ill. 265; *People* v. *Secco,* 303 id. 546.) It is claimed that the judgment here was a separate document, full and complete within itself and not dependent upon any other document, but the record decisively negatives this claim.

We must also disagree with defendant that the *corpus delicti* was not proved. The evidence clearly establishes, beyond a reasonable doubt, that the Hartel named in the indictment was the one who was killed. A brother of the deceased testified to his brother being hale and hearty before the shooting, of seeing him in the hospital after the shooting and operation, and of seeing his remains in the undertaker's parlor. Furthermore, the doctor who performed the autopsy testified that Hartel's body was pointed out to him and identified by the undertaker. That this was hearsay was not objected to at the trial and cannot be saved for review here. *People* v. *Cassidy,* 283 Ill. 398.

It is principally urged that a motion to vacate the judgment and sentence should have been allowed because of the alleged neglect of counsel assigned by the court from the public defender's office to properly interview defendant and prepare his case for trial. In a supporting affidavit defendant says that prior to his trial he had only one five-minute conference with an attorney named Ferlic, from

the public defender's office, and later only a short perfunctory conference on the morning of his trial with the lawyer Power, who represented him in court. He specifically charges an invasion or disregard of those constitutional rights guaranteed by the State and Federal constitutions which protect one against deprivation of life without due process of law. It was stipulated that only one interview was held at the county jail between defendant and an attorney from the public defender's office, but counter-affidavits signed by Benjamin C. Bachrach, the public defender, and by Frank J. Ferlic and Joseph P. Power, his assistants, disclosed that much additional preparation and attention had been given the case. A full abstract was secured of all the evidence adduced at the coroner's inquest over the cause of Hartel's death. Ferlic's affidavit also revealed that he had secured from defendant a detailed story of his life prior to August 2, 1933, in addition to information as to all the facts in the case, and had conferred at length with Bachrach and Power concerning the matter after reading the testimony given at the inquest; and further, that in addition to his conference with Power he had turned over to him a written memorandum of his interview with defendant and an abstract of the inquest testimony. The affidavit of Power recited that he had various interviews with defendant and was familiar with all the information that was obtainable, either from defendant or the coroner's inquest.

The question whether a defendant was adequately represented by able counsel must be answered solely from the circumstances of each particular case. Here the defendant was arraigned on August 22, 1933, and at this time the court appointed the public defender to represent him. The same law (Smith's Stat. 1933, chap. 34, pars. 163*d*, 163*h*,) which provides for the appointment of the public defender in Cook county to represent all persons charged with crime who are unable to employ counsel, also provides for the

appointment of assistant public defenders, who shall be licensed attorneys. No challenge is made of the qualifications, legal or moral, of either Ferlic or Power to properly represent defendant. At no time prior to judgment did defendant express dissatisfaction or request that some other attorney be appointed. No complaint is made that defendant ever requested to see his attorney and was thereafter refused or neglected. No evidence is pointed out which might have been produced in defendant's favor but was negligently omitted. On the other hand, an examination of the record shows that Power conducted his defense against insurmountable odds. The three witnesses who testified for the State had seen defendant chase and shoot Hartel from such close proximity that their testimony was convincing and unassailable. When arrested defendant had completely confessed the crime to the police officers, saying, "There is no use of me lying about it because I'm hooked anyway; I might as well tell the truth." Power labored against all of these circumstances, and his decision not to cross-examine some of the witnesses may have been the better course to pursue. The record shows that he made occasional objections to questions and tactics of the assistant State's attorney, and particularly to parts of his argument. His own plea to the jury for leniency, occupying nearly ten pages in the record, is sufficient proof that, even though unsuccessful, he had ably and sincerely conducted the trial in defendant's best interests. We have held that where the evidence is close and the accused is poorly represented by counsel a reversal may be justified, (*People* v. *Gardiner*, 303 Ill. 204,) but, as we have shown, no such situation exists here.

An effort is made by counsel for defendant to align the facts in this case with those in *Powell* v. *Alabama*, 287 U. S. 45, in order to have the same principles of law applied, but a comparison demonstrates that the two cases are not parallel. Powell and defendant are negroes and ignor-

ant, but with that the similarity ends. Powell was away from home, among strangers, while defendant had no real home, was termed by the police a "floater," all the members of his immediate family were dead, and the record is bare of any recital that anyone in Louisiana, his native State, would aid him. In the *Powell case* the evidence was conflicting and the defendant did not have the advantage of any counsel, as no lawyer was named to defend him until the very morning of the trial. The appointment made was nothing more than an outward compliance with legal requirements and imposed upon no one a substantial or definite obligation to defend. The great discrepancy between the two cases is that defendant was not compelled to defend himself immediately after arrest, as in the *Powell case,* but several weeks elapsed from the time counsel was appointed until he went to trial. The *Powell case* was tried amidst tense conditions, with State militia protecting the accused, while the trial of defendant was apparently free from any disturbing or prejudicial influence.

The defendant complains that the record does not show the plea he really made. It shows that defendant, upon arraignment, entered a plea of "not guilty." He was intelligent enough to have known at the time just what such a plea meant. We cannot believe from the record that he thereafter stood in ignorance of the plea he had made and the consequences flowing therefrom. The record rather tends to show that he speculated upon his chance of escaping a sentence of death under that plea, and, having lost, new counsel now seek to ward off the consequences of his gamble.

Because of the gravity of the charge and the penalty to be paid we have considered carefully every allegation of error made by defendant and have reviewed herein those we deemed of sufficient importance. The record does not disclose that defendant was not well represented by able and efficient counsel. His cause, such as it was and could

only be under the facts, was presented in such manner that he received a fair and impartial trial according to due process of law. Under the facts and the law his plea of accidentally discharging the gun was specious and entitled to no weight. His guilt was manifest, and the jurors would have been derelict in their duty had they found otherwise. The evidence was not voluminous or conflicting and no reversible error appears in the record.

The judgment of the criminal court of Cook county is affirmed, and the clerk of this court is directed to enter an order fixing the 20th day of April, 1934, as the date on which the original sentence entered in the criminal court of Cook county shall be executed. A certified copy of this order shall be furnished by the clerk of this court to the sheriff of Cook county. *Judgment affirmed.*