# STATE v. THOMAS

(No. 1393; March 6, 1928; 264 Pac. 1017)

*Louis Kabell, Jr.,* and *M. A. Kline,* for appellant.

74

*W. O. Wilson*, Attorney General, and *J. A. Greenwood*, Deputy Attorney General, for respondent, (*David J. Howell*, former Attorney General, and *John C. Pickett*, former Assistant Attorney General, on the briefs.)

RINER, Justice.

The defendant and appellant, John Thomas, was tried and convicted in the District Court of Uinta County, Wyoming, of the crime of statutory rape. The cause is before this court on direct appeal.

There appears to be very little controversy concerning the circumstances under which it is claimed that the al-

leged crime occurred. The record discloses that on or about the 6th day of June, 1924, the defendant, in company with the prosecuting witness and several other young people, went to a dance at the Robertson schoolhouse in Uinta County, Wyoming. The trip was made from their homes in Mountain View to the place where the dance was held, a distance of several miles, by means of an automobile. At the conclusion of the first dance after supper, which seems to have been served between twelve and one o'clock that night, defendant and prosecutrix left the dance-hall, the former wearing a heavy fur coat, buttoned around him, and the latter also putting on and wearing her coat. The night was chilly, as a light snow fell during the course of it. A number of cars were parked on the east side of the schoolhouse, with the seats of the cars facing the building, two of these being open touring cars, without side curtains, and located close together, so that there was just room to walk between them.

The east side of the school building was at this place about twenty feet in length. Five windows, three feet by five feet in size, with only the casing between them, were located in that side of the building. Their lower sills were about eight feet from the ground outside and between two and three feet from the floor of the room inside, where the dance was held. A piano stood near the windows, and on it was a 300-candle-power gas lamp, which shed its light through the windows and made it possible from the dance room to see the cars and people in them.

One of the open touring cars above mentioned was a Dodge, and in its back seat, when defendant and prosecutrix came out, were her sister and her escort, Kenneth Davis. The other open car next to it was a Buick, and after obtaining a quilt from the parties in the Dodge car, defendent and prosecuting witness placed themselves in its rear seat. The prosecutrix testified that she and defendant wrapped themselves in the quilt; the defendant stating that she alone used it. Not far from the other side of the

Buick car, to the north, was a Ford car, which was being repaired by two young men who had also come to attend the dance. They used no light for their work except what came through the schoolhouse windows, and they appear to have been engaged on the car a large part of the time defendant and prosecutrix were sitting in the Buick car's rear seat.

There were but four dances had after supper, two of them lasting about twenty minutes. At the end of the second dance Charles Thomas, a brother of defendant, left the dance room, came out and started the engine in order to warm up the radiator of the Buick car; he sat and talked with defendant and prosecutrix until the last dance commenced, when he went in and danced that. The men were working on the Ford car, he testified, when he came out, and also when he left to go in to dance. Davis and prosecutrix' sister were in the adjacent Dodge car during the entire time defendant and prosecutrix were in the Buick car, after supper and before leaving for home. Prosecutrix testified that defendant had sexual intercouse with her while they were on the back seat of the Buick car, wrapped up in the quilt, with their coats on, and with the other conditions prevailing as above detailed. While on the witness stand she gave no particulars as to the position of the parties during the sexual act, nor whether it was before or after defendant's brother came out to warm up the engine of the car. Prosecutrix also testified to having had sexual intercourse with defendant a month or so previously, the exact time she could not state. A child was born to her about February 27, 1925, she claiming defendant to be the father. Her brother, called as a witness for the state, related some alleged admissions of defendant to the effect that he was guilty of the crime charged. Defendant denied having had sexual intercourse with prosecutrix and denied being the father of her child.

This brief outline of the record touching the commission of the alleged offense shows, with reasonable clear-

ness, the nature of the case and that it is one where strongly conflicting arguments and conclusions could be easily entertained by the jury as to the guilt or innocence of the defendant. Such a situation demanded the utmost fairness and impartiality in the course of the trial on the part of the court and counsel for the state and defendant alike.

In the record it appears that counsel for the state moved to strike out, as hearsay, an answer of the witness he was cross examining, and thereupon the record proceeds verbatim as follows:

"(Here followed an argument and discussion on the motion.) Mr. Kabell: At this time the defendant, John Thomas, moves the Court that the slighting remarks directed at the witness just now be made a part of the record and that the defendant have an objection and exception thereto, and in support of the motion I would beg leave of the Court to submit respectable authority at this time. The Court: The remarks of counsel and the discussion of motions is not a part of the record; and if any of the remarks have been taken down they are ordered stricken from the record, and the jury are instructed by the Court to pay no attention whatsoever to any such remarks, as having no bearing or any connection with this case. Mr. Kabell: What is the ruling on the motion. The Court: The motion is overruled and the remarks, if taken, are ordered stricken from the record. Mr. Kabell: Exception."

This action of the court in declining to make the remarks of state's counsel directed at the defendant, who was then on the witness stand, a part of the record being thus excepted to, is assigned as error, and the point is argued in appellant's brief.

Official court reporters in the district courts of this state are required by law (Comp. Stat. 1920, Sec. 1168) to "remain in attendance on the court and take full stenographic notes in cases tried during said attendance of all

testimony or admissions made by either side, objections to the introduction of testimony, the rulings of the court thereon, and exceptions taken thereto, and such other proceedings as the court may direct." Transcripts of all or any part of the notes must also be furnished interested parties on payment of the proper fees. The statute is quite broad enough to require the reporter to take down in shorthand and furnish transcripts of what is said by the court, counsel, and witnesses in a cause, at least whenever either court or counsel requests that it be done, and so, within our knowledge, has been the general practice. Certainly, in a criminal case, in the presence of a jury, any statements of counsel concerning the admission or rejection of evidence—and the argument on a motion to strike out evidence, could hardly present an exception to this rule—should be reported and included in the record whenever either court or counsel for the parties ask that it be done. A denial of the statutory right to make a record follows when this is not permitted.

In Richardson v. State, 15 Wyo. 465, 89 Pac. 1027, this court, in speaking of its power and duty to order a new trial where the record has been lost through no fault of appellant or his counsel, said:

"Incidental to the power to compel a correct record to be sent up, or a bill of exceptions to be settled, is the power, as it seems to us, of ordering a new trial of the cause, where it is made to appear that the only record in the cause has been destroyed without possibility of substitution through no fault of the appellant, or where, without fault on the part of the appellant or his counsel, but solely because of the neglect or delay of some court official, or some accident or act of providence for which no one is responsible, it has become impossible for a bill of exceptions to be settled, without which the errors complained of cannot be considered."

In Oklahoma, the legislature enacted at statute aimed directly at such a situation as is presented by the case at

bar. After requiring that the stenographer shall take and transcribe any statements or proceedings as may be requested by counsel, it is specifically directed by the law that a refusal of the court to permit, or when requested, to require this to be done "shall be deemed prejudicial error without regard to the merits thereof." And the appellate courts of that state have repeatedly upheld and enforced the statute. See Corliss v. State, 159 Pac. (Okla.) 1015; Wiswell v. State, 173 Pac. (Okla.) 662; Ewing v. State, 190 Pac. (Okla.) 274.

In People v. Casey, 249 Pac. (Cal. App.) 525, it appeared that during the argument of the district attorney to the jury the official court reporter was absent from the court room, the court having informed him that unless requested it would not be necessary for him to take the argument. Appellant's counsel objected to certain remarks of the district attorney. The objection was overruled, but neither the remarks, the objections, nor the rulings thereon appeared in the record. It was not contended that the remarks of the district attorney were damaging to the defendant or that the court's ruling was erroneous, it being urged simply that the reporter was absent from the court room. The court say:

"We think, after careful consideration of the point presented here, and of the foregoing authorities, that it was the intention of the framers of Section 269 of the Code of Civil Procedure that in taking down the testimony it should be the duty of the reporter to also take objections and rulings thereon, but that, if it be desired that he take arraignments, or arguments, counsel should make a request therefor. Hence the mere fact that arguments were not here taken is not reversible error, and, since no objectionable statement of the district attorney is presented by the record, we are unable to say that the defendant was prejudiced thereby."

As illustrative, simply, of the attitude of appellate courts on the point we are discussing, we call attention

to the fact that the same case came before the Supreme Court of California (250 Pac. 653) by petition for a hearing there. While the petition was denied, it was said concerning that portion of the opinion of the district court of appeal quoted above, and relating to the California statute mentioned, that:

"However, we are not in accord with the intimation in the opinion that when the official phonographic reporter was actually present at and during the trial it must affirmatively appear that the defendant requested that the arguments of the prosecuting attorney to the jury be taken down before the defendant will be permitted to assign as error anything occurring during the arguments and of which no report was made. But in the case at bar the evidence sufficiently shows that the defendant acquiesced in the absence of the reporter during the argument of the prosecuting attorney, and should not now be heard to complain."

In State v. Dreany, 64 Kans. 292, 69 Pac. 182, in reversing a judgment of conviction, the opinion reads in part:

"Again, the record shows at the trial counsel for defendants were accompanied by the official court stenographer of the Twentieth Judicial District, acting in the capacity of a private stenographer for counsel, employed by defendants for the purpose of taking notes of the testimony and performing other clerical matters in the progress of the trial for the use of counsel for defendants. Upon objection made by the county attorney, such private stenographer was refused by the court permission to take notes in open court of the evidence of witnesses and other matters occurring in the progress of the trial. This was error."

Commonwealth v. Shoemaker, 87 Atl. (Pa.) 684, was a case where the defendant was convicted of manslaughter. In the course of the trial defendant's counsel asked the

court "to place upon the record the remarks which the court understood the district attorney to make." This the trial court declined to do, and such action was assigned as error. In sustaining the assignment and reversing the judgment the Supreme Court of Pennsylvania remarked:

"The trial judge committed error in not directing the official stenographer to place upon the record the remarks of the district attorney as the court had heard and understood them; that such was the proper course to pursue is plainly indicated in our decisions."

In the case at bar we have no means of knowing what the remarks of counsel for the state were, whether they were injurious and prejudicial to the defendant or not. In the opinion of counsel for the defendant they were "slighting" and were directed at the defendant, who was then testifying. They were made in the presence of the jury. The court reporter was present to take and possibly took them. Counsel for defendant requested that they be taken and made a part of the record. Not only was his statutory right to this record denied by the court, but the reporter was explicitly directed by the court to strike them from the record "if taken."

We cannot agree with the trial court that the "remarks of counsel and the discussion of motions is not part of the record," when conducted in the presence of the jury, with the court reporter in attendance, and a request by defendant through his counsel made, that such remarks and discussion be reported and included in the record. If this were not so then state's counsel could, under the guise of discussing motions to strike out evidence, make any sort of prejudicial remark before the jury concerning the defendant, his counsel, or his witnesses, and he would be helpless to secure a review of such conduct.

True, the court ordered the jury to disregard the remarks. They were evidently of sufficiently serious char-

acter to call for such action by the court. But we cannot tell whether this direction by the presiding judge cured the damage done. The grave point before us on this assignment of error is that we are asked to review that part of a record which the defendant, through no fault of his own or his counsel, was prevented by the action of the trial court from making. It would seem that the appellate jurisdiction of this court is affected. If, as said in the Richardson case, supra, this court has power to and should grant a new trial where a bill of exceptions, without which the assigned errors cannot be considered, cannot be settled "solely because of the neglect or delay of some court official," we fail to see why a new trial should not be granted where the defendant is deprived of a part of the record in the case on which error is assigned by the action of the court itself. In our judgment, it was error to deny the defendant the right to have the remarks of counsel reported in the record, under the circumstances disclosed in the case at bar.

Over objection and exception, counsel for the state was allowed, on cross-examination of one of defendant's witnesses, to ask and the witness was required to answer, this question: "I will ask you if Dr. C. A. Mills, did not, in the fore part of March, 1925, in the dining room of the residence of Mistress Luellen Haymond, in the presence of Abbie Megeath who was holding her baby, and while you were looking at the baby, ask you 'Frances, who do you think the baby looks like?' and you replied 'Oh, it looks like John Thomas?'" The witness answered, "No sir, I did not." There was nothing in the direct examination of the witness on the matter covered by the question, nor was the defendant present at the time mentioned therein. On rebuttal Dr. C. A. Mills was called by the state and the question above quoted was, over objection, permitted to be reiterated. The objection was repeated and finally sustained, and the witness left the stand without answering.

In the course of the final argument before the jury, counsel for the state, in discussing several of the instructions

of the court relating to the law of circumstantial. evidence, said: "That is a circumstance and there is a circumstance (pointing to a baby). That tow-headed child is a circumstance that corroborates the evidence in this case that cannot be denied." And again in his argument, state's counsel remarked: "Why, gentlemen, look at the child! You have looked at it, and seen it in the court room here. Was there ever a child born with the resemblance of that child or intelligence, perfect, well-developed, between a brother and a sister." Objection and exception was made to this remark by defendant's counsel, whereupon the court remarked merely that the objection and exception would be shown on the record and counsel for the state then said: "Yes, let it be shown on the record; and I repeat the same remarks." To this last statement before the jury the defendant by his counsel again objected and excepted. In closing the argument the county attorney referred once more to the question asked Dr. Mills and said, "I cannot see the force of the question yet, because, gentlemen, I hold that there should be no questions asked and no argument in the matter when anything can be referred to itself. That little baby could be referred to any time, and gentlemen, there is no argument." This conduct on the part of state's counsel as well as the ruling of the court in permitting the witness to answer the quoted question is assigned and argued as error.

In State v. Neel, 23 Utah 541, 65 Pac. 594, the court, in discussing the competency of evidence of resemblance between the defendant and a child born to the prosecutrix under a charge of unlawful intercourse with her, used the following language:

"This is a criminal prosecution, and does not depend upon the paternity of the child. In cases of this character, evidence of resemblance between the child and the defendant is inherently unsatisfactory, as it is a matter of universal knowledge that different persons, with equal opportunities of examination, will usually come to different conclusions in cases of mature persons, where family likeness

is more likely to be developed, if it exists, than in very young children. To allow a child to be offered in evidence, so that the jury could by inspection arrive at a verdict on their individual knowledge of facts not testified to in open court, would be exceedingly dangerous and unjust. Such a course would prevent a cross-examination, and the evidence of the knowledge gained by the jury, by an inspection and comparison, could not be preserved in a bill of exceptions, or in any way questioned on appeal. Each juror would be the judge of the correctness of his own opinion, and the appellate court would be compelled to affirm the judgment based on a record that contained no facts to support it. As said in the case of Hanawalt v. State, 64 Wis. 84-88, 24 N. W. 489, 54 Am. Rep. 588: 'If the child itself, when presented to the jury for inspection, is or may be evidence tending to prove its parentage, then this court, upon appeal, could not reverse their verdict, although the written bill of exceptions entirely fail to support such verdict, for the reason that this court would not have before it all the evidence in the case upon which the jury acted.' It was competent, in corroboration of the testimony of the prosecutrix, to bring the child into court, and to prove its birth, and identify it as a result of the illicit intercourse; but it is not competent to introduce the child in evidence for the purpose of comparing its features with those of the accused to show a resemblance, nor would it have been competent for the county attorney in his argument to the jury to have made comments as to the resemblance.''

Eckhart v. Peterson, 94 Wash. 379, 162 Pac. 551, was a case of rape where appellant testified to the child's resemblance to another man and where his own counsel had referred to the child in the jury's presence. While holding that having attempted to profit by the baby's presence in the court room, he could not complain, yet the court said:

''In view of a possible retrial we will say, however, that it is clearly the better rule to permit no reference to a supposed resemblance of the child to any one. The child cannot be made an exhibit, and the resemblance of a baby to its father is too indistinct and uncertain to be admissible as having any probative value. State v. Danforth, 48 Iowa 43, 30 Am. Rep. 387; Gray v. State, 43 Tex. Cr. R. 300, 65 S. W. 375; State v. Neel, 23 Utah 541, 65 Pac. 494.''

In Kovacsics v. State, 139 N. E. (Ind.) 359 where a conviction for statutory rape was reversed because the prosecutor took the baby in his arms and asked the prosecutrix if it was her baby, the court declared that:

"This was error. The act of the deputy prosecuting attorney was obviously designed to influence the jury, by thus bringing the child before them with the statement that it was the one born to the prosecuting witness as a result of the alleged rape. She had already testified that a child was born and was in the courtroom, and no proper purpose could have been served by afterward bringing it before the jury and calling attention to it by the question that was asked. This court has repeatedly decided that the child cannot be offered in evidence nor its features compared with the features of the alleged father in a bastardy case. La Matt v. State, 128 Ind. 123, 27 N. E. 346; Reitz v. State, 33 Ind. 187; Risk v. State, 19 Ind. 152. The reasoning of the cases cited applied to the facts of the case at bar, and obviously one purpose of the deputy prosecuting attorney in what he did was to give the jury an opportunity for such a comparison."

See also Bilkovie v. Loeb, 141 N. Y. S. 279, a civil action for damages for rape; State v. Nathoo, 152 Ia. 665, 133 N. W. 129; Gray v. State, 65 S. W. 375.

The case of State v. Hunt, 122 N. W. (Ia.) 902, was one involving the crime of seduction. Defendant was found guilty. The trial court permitted the child born to prosecutrix to be in the court room and referred to simply as the child begotten of her, holding this to be corroborative of the prosecutrix as to the *corpus delicti*, though "not entitled to any consideration as tending to connect the defendant with the offense." This action of the lower court was adjudged correct by the Supreme Court of Iowa. But counsel for the state, in his closing address to the jury, pointed to the child, as he said, "with a thousand hands" and asserted that it was "all the evidence that any man would ask" of the defendant's connection with the offense. In reversing the judgment for this act of counsel the appellate court used this language:

"This was, in effect, an exhibition of the child to the jury for the purpose of determining alleged resemblance, and was seriously improper conduct on the part of counsel. This act on the part of counsel is suffiicent of itself to require us to order a new trial, and we will not enter into a discussion of other portions of the address. It is sufficient to say that there is much in the address which cannot be approved."

In the case we are now considering it is clear that there were repeated references on the part of counsel for the state to the child born to the prosecutrix, suggesting to the jury a claimed resemblance between it and defendant. The child at the date of the trial was only eight months old. The question quoted above and which defendant's witness was required to answer, was improper from many viewpoints, yet it was allowed to be reiterated on the state's rebuttal and in the face of defendant's objection. While there are some authorities to the contrary, we think the better rule on the point under discussion is as stated in the authorities cited above. We are not inclined to favor a rule which would encourage jurors in cases of this kind to indulge their powers of imagination. There is, we think, error in the record because of the conduct of counsel which we have thus reviewed and because of the rulings of the court touching the matter.

The trial court was asked by defendant to instruct the jury as follows:

"The Court instructs the jury that in considering the evidence as to whether or not the testimony of Abbie Megeath is corroborated as to whether or not the defendant had sexual intercourse with her, the fact that a child was born to her is not to be considered as corroborative on that point."

This request was refused, exception was saved, and the refusal to so charge is assigned as error. We think it was error. The fact of the birth of the child was obviously an outstanding circumstance in the case, and the defendant

had a right to have the limits of its probative value set before the jury under a proper instruction. The instructions given the jury did not guard the point.

The Supreme Court of Illinois, in considering an instruction couched in identical language with that quoted above and which had also been in that case refused by the trial court, had this to say in People v. Cassidy, 119 N. E. (Ill.) 279:

"In this connection, counsel further argues that the court erred in not giving an instruction offered on behalf of plaintiffs in error which stated: 'That in considering the evidence as to whether or not the testimony of Anna Nadwarna is corroborated as to whether or not the defendant had sexual intercourse with her, the fact that a child was born to her is not a fact to be considered as corroborative on that point.' We think this instruction stated a correct principle of law and should have been given. State v. Blackburn, 136 Iowa 743, 114 N. W. 531; Kevern v. People, 224 Ill. 170, 79 N. E. 574. Counsel for the state insist that it is not shown that all the instructions offered on the trial are before this court, and that therefore it cannot be assumed that there was no other instruction containing the same principle of law given by the trial court. The record, in our judgment, shows clearly that the evidence heard on the trial and all the instructions given are before us, and therefore it must be held that the court committed error in refusing this instruction."

To exactly the same effect on the point are the decisions of the Supreme Court of Iowa in State v. Blackburn, 136 Ia. 743, 114 N. W. 531, and State v. Cotter, 132 N. W. (Ia.) 760.

Many errors are assigned relative to aside remarks of counsel for the state which were objected and excepted to by defendant's counsel as tending to discredit the defendant and his attorney before the jury. We have examined these parts of the record with care and are regretfully forced to the conclusion that there is foundation for complaint when the record is considered in its entirety. We do not think that counsel for the state endeavored to follow strictly the

rules governing the conduct of a prosecuting officer in a criminal case as approved by this court in State v. Wilson, 32 Wyo. 37, 228 Pac. 803. If ever there was a case where these rules of conduct should have been rigidly adhered to, this is one. Cases of this character almost inevitably stir up passion and prejudice in the community where the cases arise, and these are only too prone to be brought into the court room, where only impartial justice should sit.

A careful and painstaking review by us of this record has made it impossible for us to say that the defendant was not prejudiced by the errors committed on the trial of the case. For this reason, and upon the grounds in this opinion discussed, we are compelled to hold that the judgment of the District Court of Uinta County must be reversed, and the cause remanded for further proceedings in harmony with the views herein expressed.

*Reversed and Remanded.*

BLUME, Chief Justice, and KIMBALL, Justice, concur.