**James Alan FARBOTNIK, Appellant (Defendant),**

v.

**The STATE of Wyoming, Appellee (Plaintiff).**

**No. 90–277.**

Supreme Court of Wyoming.

April 2, 1993.

Wyoming Public Defender Program: Leonard D. Munker, State Public Defender, David Gosar, Appellate Counsel, for appellant.

James Farbotnik, pro se.

Joseph B. Meyer, Atty. Gen., Sylvia Lee Hackl, Deputy Atty. Gen., Jennifer L. Gimbel, Sr. Asst. Atty. Gen., for appellee.

Before MACY, C.J., and THOMAS, CARDINE, and GOLDEN, JJ., and URBIGKIT, J., Retired.

THOMAS, Justice.

The primary issue to be resolved in this case is whether the rule articulated in *Bearpaw v. State*, 803 P.2d 70 (Wyo.1990), should be applied retrospectively to a case in which the defendant was a fugitive for almost seven years after his conviction. Application of the *Bearpaw* rule to this case would require reversal. If the *Bear-*

*paw* rule is not applied, collateral issues relating to the sufficiency of the evidence and unlawful aspects of the sentence must be addressed. In addition, James Alan Farbotnik (Farbotnik) raises, through a *pro se* brief, issues of ineffective assistance of counsel; disparate, and therefore, unlawful sentencing; inadmissible evidence; and jury bias. We conclude that the rule announced in *Bearpaw* constitutes a supervisory decision by this court, which will not be applied retrospectively. None of the other claims of error have any viability, except for the claims of error in the requirement for restitution and payment into the crime victims' compensation account, which require modification of the judgment and sentence. The judgment and sentence, as modified, is affirmed.

Farbotnik, through counsel, frames the following issues in the Brief of Appellant:

I. Did the district court properly order restitution in this case?

II. If the district court did properly order restitution, must that provision be remanded for a proper determination of the amount?

III. Did the district court properly order the Appellant to pay into the Victim's Crime Compensation Fund?

IV. Must Appellant's conviction be reversed because voir dire, opening statements, and closing arguments were not recorded by any means?

V. Was there sufficient evidence to convict the Appellant of grand larceny?

The *pro se* brief presented by Farbotnik, together with a handwritten affidavit by which he endeavors to supplement the record, attempt to bolster the claims of insufficient evidence, an incomplete record, and the improper imposition of restitution. Farbotnik, in addition, asserts essentially these further claims:

I. Whether Appellant's retained trial counsel committed errors so serious that sufficient prejudice was created depriving Appellant of a fair trial?

II. Whether the sentence of the trial court properly reflected parity between

Appellant's period of confinement and that of the codefendant?

III. Whether the trial court erred in permitting an improper courtroom identification?

IV. Whether members of the jury were biased preventing a fair trial?

In its Brief of the Appellee, the State of Wyoming rephrases and reorders the issues as follows:

I. Was there sufficient evidence to convict Appellant of grand larceny?

II. Were the restitution and surcharge provisions of Appellant's sentence improper?

III. Does absence from the appellate record of the voir dire, opening statements and closing arguments deprive Appellant of the effective assistance of appellate counsel or does it, without a showing that something prejudicial occurred in the unreported portions of the trial, necessitate reversal of Appellant's conviction?

IV. Should the Court consider the issues presented in Appellant's pro se brief, because they are not supported by proper citation or cogent authority?

The underlying facts can be related concisely, although they will be set forth in greater detail in connection with the discussion of the sufficiency of the evidence. In December of 1982, the victim, BF, met a dancer, SS, who at that time was performing in a nightclub in the Cheyenne area. BF had been a mechanic but, at that time, he was on active military duty. After Christmas of 1982, SS and another female dancer lived with BF in the victim's home. BF proposed marriage to SS, and he even gave her an engagement ring.

SS introduced Farbotnik, identified as "Jessie James," to BF in January, 1983. She persuaded BF to loan her $300 to be given to Farbotnik to help pay for his defense of a criminal charge pending in Colorado. Not long after that, SS joined Farbotnik and another male friend, BR, on a trip to Los Angeles, California to raise additional money for Farbotnik's Colorado defense. In late February, 1983, those three returned to Cheyenne, and they stayed in BF's home. While they were staying there, they had unlimited access to BF's home and its contents. Subsequently, Farbotnik, SS, and BR left BF's home and went to Denver, Colorado. SS claimed that she left because BF had assaulted her.

Because of his concern about his relationship with SS, BF finally contacted her in late March at a Denver area nightclub where she was performing. BF arranged to visit with her, and she agreed to meet him at his motel. SS did not arrive at the motel, however, and BF then attempted suicide for which he was treated at Fitzsimmons Army Medical Center. When the police advised SS of these developments, she telephoned BF at the hospital to arrange a reconciliation. BF asked her to collect his personal effects from his car at the motel where he had been staying. There was a key to his home on his car key ring.

At the end of March, Farbotnik and SS traveled to Cheyenne. SS said she made the trip because BF had asked her to pick up his guitar and some of his clothes and bring them to the hospital. BF said SS telephoned him and asked if he needed anything from his home. When Farbotnik testified at his trial, Farbotnik stated he drove SS to Cheyenne in his van because BF's car, which SS was driving, was not safe. In his supplementation to the record, Farbotnik now recalls that SS drove BF's car to Cheyenne, and Farbotnik followed in his van.

Farbotnik and SS spent that night at BF's home, which was a basement apartment. SS used BF's telephone to call him at the hospital and also to call the nightclub where she worked. An upstairs neighbor spoke to SS during the evening while the neighbor was getting clothes from a common laundry, and the neighbors observed Farbotnik loading boxes from the residence into his van the following morning. Later that day, those neighbors, who had access to BF's apartment to get to the laundry, noticed several missing items, and they called the police. The neighbors also called BF at the hospital, and BF then reached SS by telephone and accused her and Farbotnik of taking his property. At

that time, SS told BF to not get too excited about the missing items, stating that the things might show up in a few days.

SS agreed to pick up BF at the hospital and return his car the next day. BF then left SS in Denver and returned to Cheyenne to meet with police and inventory those missing items, which included tools, a television, and a video recorder. BF then called SS and told her that the police had found fingerprints. According to BF, SS responded by stating she did not want "Jessie" (apparently alluding to Farbotnik) to go to jail, and she would take the "rap." Subsequently, Farbotnik and SS were arrested in Los Angeles, California. They were tried in a joint trial in September of 1983, and the jury found them both guilty of grand larceny.

Farbotnik and SS were released on bail pending sentencing following the conviction. Before the presentence investigation was completed, however, Farbotnik and SS fled to Canada. Farbotnik remained a fugitive until he was deported from Canada in 1990. He then was arrested by Minnesota authorities and was extradited to Wyoming for sentencing. SS had returned to Wyoming previously and already had served a sentence of eighteen to thirty-six months. When sentencing Farbotnik, the district court noted the fact of SS's sentence and the court then sentenced Farbotnik to a minimum of thirty months and a maximum of sixty-five months in the state penitentiary. Farbotnik also was ordered to pay $16,945.50 in restitution for the stolen property and $50 into the crime victims' compensation account. Farbotnik has appealed from that judgment and sentence.

■ We consider first the retrospective application of this court's decision in *Bearpaw*, since a conclusion that *Bearpaw* applies to Farbotnik's case would lead to a reversal. We note preliminarily that Farbotnik was sentenced some three months prior to the decision of this court in *Bearpaw* and nearly seven years intervened between his trial and his sentence. The effective debate is whether *Bearpaw* articulates a constitutional right with respect to a complete record in a criminal case or whether, on the other hand, *Bearpaw* represents the exercise of this court's supervisory power. Retrospective application normally would be associated with a constitutional proposition, but a prospective application is generally indicated for rules arising out of the court's supervisory power except for those rules that are intended to substantially improve the fact finding at trial.

In *Bearpaw*, we reversed and remanded a conviction for second degree murder, holding that an inadequate record prevented the determination of whether Bearpaw had received effective assistance of trial counsel and a fair trial. That record did not include a verbatim transcript of selection of the jury, opening statements, reading of a transcript of an in-custody interview, instruction conferences, reading of jury instructions, or closing arguments. After extensive supplementation orders, it was impossible to obtain transcripts of impaneling, voir dire, opening statements, and closing arguments because the electronic tapes containing the reporter's notes had been destroyed.

In this case, the trial proceedings were stenographically reported in 1983 and transcribed in 1991, after Farbotnik appealed. The transcript includes proceedings in chambers, such as various pre-trial and trial motions, argument on motions, and rulings on motions. There is a transcript of the testimony of all prosecution and defense witnesses, the presentation of exhibits, objections, the instruction conference, and the poll of the jury. The impaneling of the jury, the voir dire of the jury, opening statements and closing arguments of counsel, and the reading of the jury instructions apparently were not reported and, therefore, not transcribed. The written instructions to the jury are present in the record and are signed by the trial judge as having been given. The hearings on Farbotnik's motion for a new trial and sentencing in 1990 were reported and transcribed.

In addition, Farbotnik was granted leave to supplement the record. He filed a 154–page handwritten affidavit with exhibits "A" through "S" attached. Most of this

material is not relevant and merely offers Farbotnik's latest version of the events, but the court has considered those portions relating to trial proceedings. Farbotnik's position is that *Bearpaw* advances a new constitutional rule of criminal procedure based upon a due process requirement for effective assistance of appellate counsel. Farbotnik contends this concept is applicable in his case because the incomplete record of his 1983 trial serves to deprive him of the effective assistance of appellate counsel. This contention is advanced despite the absence of any articulation of such a proposition in *Bearpaw*.

■ Farbotnik admits neither the United States Supreme Court nor this court has directly held that due process is violated by the absence of significant portions of the trial record. Farbotnik's concession is correct, but he relies upon *Evitts v. Lucey*, 469 U.S. 387, 105 S.Ct. 830, 83 L.Ed.2d 821, *reh'g denied*, 470 U.S. 1065, 105 S.Ct. 1783, 84 L.Ed.2d 841 (1985); *Douglas v. California*, 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811, *reh'g denied*, 373 U.S. 905, 83 S.Ct. 1288, 10 L.Ed.2d 200 (1963); and *Griffin v. Illinois*, 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891, *reh'g denied*, 351 U.S. 958, 76 S.Ct. 844, 100 L.Ed. 1480 (1956), as implying a due process violation from the absence of a complete transcript.

Farbotnik overstates the thrust of these decisions. The plurality in *Griffin* held that indigent defendants must be afforded the means for an adequate and effective appellate review, but the court stopped short of requiring the state to provide a verbatim transcript in every case, noting that other methods of reporting trial proceedings are appropriate. *Douglas* requires that, if a state provides an appeal as a matter of right, due process guarantees the right to counsel in the initial appeal. *Evitts* holds that indigents are entitled to effective appellate counsel. The common theme of these cases is limited to the principle that, when a state establishes a system of appeals as a right, it is required to afford each defendant a fair opportunity to obtain an adjudication on the merits of the appeal pursuant to due process require-

ments. As stated in *Griffin*, 351 U.S. at 19, 76 S.Ct. at 590–91: "Destitute defendants must be afforded as adequate appellate review as defendants who have money enough to buy transcripts."

Farbotnik does not purport to have been indigent at the time of trial. He was represented by retained counsel, although the public defender has represented him at sentencing and in this appeal. There is nothing that indicates any failure at trial to adhere to the then-prevailing norms of trial conduct. The statute then required the recording of "all testimony or admissions made by either side, objections to the introduction of testimony, the ruling of the court thereon, the exceptions taken thereto, and such other proceedings as the court may direct." Wyo.Stat. § 5-3-403 (1977). The incomplete record in this case was not the product of an invidious discrimination against an indigent. The defendant who paid for a transcript would have received the identical material. The obvious example is SS who also was represented by retained counsel at trial.

We are satisfied Farbotnik's record complies with federal due process mandates. Testimony and evidence introduced by the prosecution and the defense is present as is the charge to the jury. The record is sufficiently complete for counsel to assert several errors, including the sufficiency of the evidence. Counsel chose not to allege any errors in jury selection or the conduct of the argument, but Farbotnik's pro se materials supplement the record on alleged errors in jury selection. Under federal standards, due process simply requires a record of sufficient completeness to permit proper consideration of claims of error. *Draper v. Washington*, 372 U.S. 487, 83 S.Ct. 774, 9 L.Ed.2d 899 (1963). "A 'record of sufficient completeness' does not translate automatically into a complete verbatim transcript." *Mayer v. City of Chicago*, 404 U.S. 189, 194, 92 S.Ct. 410, 414, 30 L.Ed.2d 372 (1971). "[T]he State must provide a full verbatim record where that is necessary to assure the indigent as effective an appeal as would be available to the defendant with resources to pay his own way." *Mayer*, 404 U.S. at 195, 92 S.Ct. at 415. In

this instance, the ability to pay had no impact upon the completeness of the record.

Farbotnik also attempts to rely upon our interpretation of *Richardson v. State,* 15 Wyo. 465, 89 P. 1027 (1907), to inject constitutional principles into *Bearpaw.* In *Bearpaw,* 803 P.2d at 78–79, we said:

> The [Richardson] court recognized an absolute right of appeal in a criminal case and the corollary right to be provided a complete record. Otherwise, the court noted, the defendant is effectively deprived of the right of appeal. *Richardson* held that a new trial is required when a necessary record is absent.

A careful study of *Richardson* and other cases demonstrates that Farbotnik's reliance is not well founded.

The right to appeal in Wyoming alluded to in *Richardson* was statutory. Justice Potter there noted that a 1901 amendment to the statutes provided a right to appeal criminal cases without first requesting the court's permission in the form of a writ of error. *Richardson,* 89 P. at 1030 (citing House Bill No. 141, ch. 63, § 1 (1901) (last codified at Wyo.Stat. § 7–12–201 (1977)) (repealed 1985) (superseded by Wyo. R.Crim.P. 38, 39, 56 (1969)) (superseded by Wyo.R.App.P. 1.01, 2.01, 2.11, 27 (1978)). It is clear that the right to a complete record, established in *Bearpaw,* is not based upon constitutional principles if it originated from a statutory right to appeal. *See Mau v. Stoner,* 14 Wyo. 183, 83 P. 218 (1905); *State v. Heiner,* 683 P.2d 629 (Wyo. 1984) (Rooney, C.J., concurring); *Geraud v. Schrader,* 531 P.2d 872 (Wyo.1975), *cert. denied sub nom., Wind River Indian Educ. Ass'n, Inc. v. Ward,* 423 U.S. 904, 96 S.Ct. 205, 46 L.Ed.2d 134 (1975); *State v. Benales,* 365 P.2d 811 (Wyo.1961) (per curiam). The only constitutional component found in *Richardson* relates to the authority of the Supreme Court to conduct appellate review and its statutory power to order a new trial. Farbotnik confuses constitutional appellate authority as compared to a statutory right to appeal. We note the law is settled that there is no federal constitutional right to appeal in a criminal

case. *McKane v. Durston,* 153 U.S. 684, 14 S.Ct. 913, 38 L.Ed. 867 (1894).

It is important to note that, in *Richardson,* and a similar decision in *State v. Thomas,* 38 Wyo. 72, 264 P. 1017 (1928), there was concern that the unavailability of the transcript of evidence, rulings, and exceptions was not attributable to the plaintiff-in-error or his counsel, and the matter could not be reproduced or duplicated. *Bearpaw* does expand upon *Richardson,* holding that first, the nature of a complete transcript is expanded to include the voir dire, opening statements, and closing arguments and, second, the *Richardson* requirement that the shortfall not be attributable to fault of appellant or his counsel is modified when the court is testing the effectiveness of counsel's representation. *Bearpaw* expands upon the *Richardson* rule by reversing when the incomplete record inhibits the court from rationally analyzing the claims of ineffective assistance of trial counsel.

In *Bearpaw,* the only constitutional component is a concern that the conduct of counsel, including the failure to file an adequate designation of the record on appeal, could result in a claim under the Sixth Amendment of ineffectiveness of trial counsel. *See Frias v. State,* 722 P.2d 135 (Wyo.1986); *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Bearpaw's trial was completely reported, but the missing portions of the proceedings were not transcribed because of the failure of counsel to designate them for the record on appeal. The source material then was destroyed by the court reporter. The incomplete record that resulted made it impossible for this court to determine whether trial counsel's representation was ineffective in a way that prejudiced the defense under the *Strickland* standard.

Farbotnik's claim differs from that found in *Bearpaw.* Farbotnik's counsel designated the record on appeal and asked that it include the transcript of voir dire, opening statements, and closing arguments. The failure to report these proceedings made it impossible to comply with the designation. The conduct of counsel in this case does not

suggest constitutional ineffectiveness like that alluded to in *Bearpaw*. Recognizing this distinction, Farbotnik argues an expansive reading of *Bearpaw* to declare that the failure to provide the complete record on appeal inhibits the effective assistance of appellate counsel. Farbotnik does not argue the ineffectiveness of trial counsel as to the record, but the pro se materials he filed do raise that issue with respect to other claims of error.

The argument of the State that *Bearpaw* should be overruled because it is inconsistent with *Spilman v. State*, 633 P.2d 183 (Wyo.1981), does not serve to counter Farbotnik's contentions. The holding in *Spilman* was that the failure of trial counsel to have the voir dire, opening statements, and closing arguments recorded does not in and of itself constitute ineffectiveness of counsel. *Spilman* also requires a showing of prejudice. There is no inconsistency between *Spilman* and *Bearpaw* because Spilman premised his claim on ineffective assistance of counsel "solely upon the failure of his trial counsel to have the voir dire examination and the opening and closing statements reported" without contending that any prejudice attached. *Spilman*, 633 P.2d at 184. Bearpaw's claims of ineffectiveness were much broader, and he did assert prejudice including the failure to designate the entire transcription of court proceedings; the failure to make certain defense filings, such as a witness list; and the failure to make motions with respect to a change of venue and to suppress an in-custody interview or a witness statement. The thrust of *Bearpaw* was that these claims of ineffectiveness could not be tested without the comprehensive record, which was not available. Because *Bearpaw* is distinguishable from *Spilman*, we do not agree with the State's contention that we should overrule *Bearpaw*.

This record does not disclose an affirmative waiver by Farbotnik's trial counsel of the reporting of voir dire, opening statements, and closing arguments. Waiver, however, may be presumed from the failure to object. *Bradley v. State*, 635 P.2d 1161 (Wyo.1981). Invoking waiver raises a question as to whether the waiver results in reversible error or suggests ineffectiveness of appellate counsel, which is what Farbotnik claims. *See Entsminger v. Iowa*, 386 U.S. 748, 87 S.Ct. 1402, 18 L.Ed.2d 501 (1967). The resolution depends upon whether the case is controlled by the rule announced in *Bearpaw* or by Wyo.R.App.P. 4.01.

The conclusion that *Bearpaw* was a supervisory decision of this court, rather than premised upon constitutional rights is strengthened by the amendment to Wyo. R.App.P. 4.01 adopted contemporaneously with the consideration of *Bearpaw*.[1] Rule 4.01 is broader than the rule of *Bearpaw*. The rule requires that voir dire, opening statements, and closing arguments must be included in transcripts in criminal cases. After the effective date of the amendment to Rule 4.01, it is mandatory that these materials be included in the transcript in a criminal case. Farbotnik's trial occurred seven years prior to the amendment to Rule 4.01. We afford no retrospective effect to the rule amendment.

In *Hardy v. United States*, 375 U.S. 277, 84 S.Ct. 424, 11 L.Ed.2d 331 (1964), the Supreme Court of the United States held that, when the appellate counsel for an indigent is different from the trial counsel, the right to appeal includes a complete transcript of the trial. The court ruled that the duty of appellate counsel to advocate his client's position cannot be discharged without a transcript of the testimony and evidence presented by the prosecution and the defendant and the court's charge to the jury. The court plainly stated, however: "We deal here only with the [federal] statutory scheme and do not reach a consideration of constitutional requirements." *Hardy*, 375 U.S. at 282, 84 S.Ct. at 428. It follows that *Hardy* is not controlling with respect to cases in state courts.

In *Bearpaw*, we cited as "supporting and illustrative of the continued national vitality of the *Richardson* principle" two Fifth

---

1. The Wyoming Rules of Appellate Procedure have been revised since this case was presented. The reference to Wyo.R.App.P. is to those that were in effect at the time of this case.

Circuit cases that build on *Hardy.* We recognize, however, that *Hardy; United States v. Selva,* 559 F.2d 1303 (5th Cir. 1977); and *United States v. Brumley,* 560 F.2d 1268 (5th Cir.1977), all are premised upon a requirement in the Federal Court Reporter Act that verbatim recordings be made of "all proceedings in criminal cases had in open court." 28 U.S.C. § 753(b) (1988). When Wyo.R.App.P. 4.01 was amended in 1990, the amendment created a similar requirement in Wyoming that transcripts in criminal cases contain all proceedings. We already have noted the inapplicability of Wyo.R.App.P. 4.01 to Farbotnik's case because his trial occurred prior to its adoption. Farbotnik also is foreclosed from insisting upon retrospective application of the rule announced in these federal cases because that is not a new rule of criminal procedure based upon constitutional guarantees. It simply promulgates a policy decision based upon federal legislation. The reliance upon *Brumley* in *Bearpaw* is recognition of a policy in the federal courts parallel to that articulated in *Richardson.* *Bearpaw,* similarly to the federal cases, represents a supervisory articulation rather than the announcement of a constitutional principle. Consequently, the recognition of *Brumley* in *Bearpaw* does not afford any opportunity to claim retrospective application.

■ We are satisfied the record available to Farbotnik meets the constitutional requirements for effective assistance of appellate counsel. Acknowledging that the State is constitutionally required to provide the means of affording "adequate and effective appellate review" to indigents, *Entsminger,* 386 U.S. at 751, 87 S.Ct. at 1403 (quoting *Griffin,* 351 U.S. at 20, 76 S.Ct. at 591), the record in this case meets the standard. The thirteen-volume record is sufficiently complete to permit the assignment of multiple errors in this case. Furthermore, it is sufficiently complete to permit this court to review those errors. The failure to report the voir dire, opening statements, and closing arguments, in the absence of some timely objection or claim of prejudice by Farbotnik, does not suffice as a way for him to escape justice now.

*State v. Madera,* 206 Mont. 140, 670 P.2d 552 (1983); *See also, Madera v. Risley,* 885 F.2d 646 (9th Cir.1989) (holding without a showing of prejudice the failure to record portions of trial does not constitute a due process violation).

We also are satisfied that, as a supervisory decision, retrospective application is neither required nor appropriate. We recognize the rule favoring retroactive application of those supervisory decisions that encompass a purpose to "substantially improve the accuracy of the fact finding process at trial." *Engberg v. Meyer,* 820 P.2d 70, 76 (Wyo.1991); *Flores v. State,* 572 P.2d 746, 747 (Wyo.1977) (quoting *United States v. United States Coin & Currency,* 401 U.S. 715, 724, 91 S.Ct. 1041, 1046, 28 L.Ed.2d 434 (1971)). We examine then the application of retroactivity in this case in the context of whether *Bearpaw* articulates a rule sufficiently involving the fact finding process at trial that it should be accorded retrospective application.

We have adopted the principles set forth in *Stovall v. Denno,* 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967), to decide whether a defendant should receive the benefit of retroactive application of a decision. *Engberg; Ostwald v. State,* 538 P.2d 1298 (Wyo.1975). Under the *Stovall* standard, we consider the purpose to be served by the new rule; the extent of reliance by law enforcement authorities on the earlier rule; and the effect on the administration of justice of a retrospective application of the new standard. *Stovall.* *See also, Linkletter v. Walker,* 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965).

Farbotnik argues for the adoption of a rule he contends has been articulated in recent decisions of the Supreme Court of the United States that have abandoned the *Stovall* analysis. The Supreme Court has said that: "[a] new rule for the conduct of criminal prosecutions is to be applied retroactively to all cases, state or federal, pending on direct review or not yet final, with no exception for cases in which the new rule constitutes a 'clear break' with the past." *Griffith v. Kentucky,* 479 U.S. 314, 328, 107 S.Ct. 708, 716, 93 L.Ed.2d 649

(1987) (holding retroactive the constitutional rule precluding racially discriminatory use of peremptory challenges stated in *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), *overruling Swain v. Alabama,* 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759, reh'g denied, 381 U.S. 921, 85 S.Ct. 1528, 14 L.Ed.2d 442 (1965)). *See also, Teague v. Lane,* 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334, *reh'g denied,* 490 U.S. 1031, 109 S.Ct. 1771, 104 L.Ed.2d 206 (1989) (limiting consideration of retroactivity in federal post-conviction relief proceedings). In *Griffith,* the Supreme Court adopted a view of retroactivity that Justice Harlan had advocated in *Desist v. United States,* 394 U.S. 244, 89 S.Ct. 1048, 22 L.Ed.2d 248 (1969) (Harlan, J., dissenting) and in *Mackey v. United States,* 401 U.S. 667, 91 S.Ct. 1160, 28 L.Ed.2d 404 (1971) (Harlan, J., concurring).

This view rejects any specific case analysis of retroactive decisions for any case pending on direct review. *Griffith.* The application of *Griffith* is limited, however, to new rules of criminal procedure that "(1) are binding on the federal courts pursuant to the Supreme Court's supervisory powers in the federal system, or (2) are binding on state and federal courts as a matter of federal constitutional law." *People v. Carrera,* 49 Cal.3d 291, 261 Cal.Rptr. 348, 369–70, 777 P.2d 121, 142 (1989), *cert. denied,* 495 U.S. 911, 110 S.Ct. 1938, 109 L.Ed.2d 301 (1990); *People v. Murtishaw,* 48 Cal.3d 1001, 258 Cal.Rptr. 821, 773 P.2d 172 (Cal.1989), *cert. denied,* 497 U.S. 1010, 110 S.Ct. 3255, 111 L.Ed.2d 764 (1990). If neither of those conditions pertains, a state court is free to define the limits of prospective or retroactive application of any precedent because the constitution of the United States is silent on that issue. *Great Northern Ry. Co. v. Sunburst Oil & Ref. Co.,* 287 U.S. 358, 53 S.Ct. 145, 77 L.Ed. 360 (1932); *Andrews v. Morris,* 677 P.2d 81 (Utah 1983).

In *Sunburst,* the Supreme Court of the United States acknowledged that "[a] State in defining the limits of adherence to precedent may make a choice for itself between the principle of forward operation and that of relation backward." *Sunburst,* 287 U.S.

at 364, 53 S.Ct. at 148. We have acknowledged our authority to determine the manner in which decisions will be given retroactive application in *Ostwald,* 538 P.2d 1298. Our adoption of the *Stovall* test permits us to weigh the "interest of justice" in making a rule prospective. *Ostwald,* 538 P.2d at 1303 (*quoting Stovall,* 388 U.S. at 297, 87 S.Ct. at 1969).

This case is a classic example of the danger in invoking *Griffith's* blanket rule for decisions with respect to retroactivity, and the wisdom of maintaining the "interest of justice" standard. Farbotnik was tried and convicted in 1983 and, after being released on bond, he fled the jurisdiction and remained a fugitive for nearly seven years. Generally, retrospective application of either new constitutional rules of criminal procedure or supervisory rules improving the accuracy of fact finding at trial is limited to those cases on direct review. *Flores; Ostwald.* The interest of the State in achieving finality justifies limited retroactivity. Had Farbotnik been sentenced in 1983, at the time his sentencing was scheduled, his conviction would not now be on direct review. The case would have become final long before the *Bearpaw* decision.

Were we to afford Farbotnik the benefit of this new rule, available to him only because he was a fugitive for seven years, we would ignore the disparate nature of his case and expose the potential injustice under the blanket rule of *Griffith.* The case of SS presents an obvious comparison to demonstrate the potential injustice. SS also fled, but returned to the jurisdiction prior to Farbotnik, and her case became final prior to *Bearpaw.* A manifest injustice would be perpetrated if Farbotnik were permitted to benefit from the *Bearpaw* principle simply because he remained a fugitive longer than SS. This kind of self-help would encourage defendants to flee and remain fugitives while awaiting changes in the law. The interest of justice is not served by encouraging convicted felons to flee before sentencing.

We also note that the tenor of *Bearpaw* argues against retrospective application as

a rule to "substantially improve the accuracy of the fact finding process at trial." In *Engberg*, the retroactive application of a decision requiring disclosure by the State to a criminal defendant of the fact that a witness had been hypnotized was approved. The obvious aim of that rule was to improve the accuracy of fact finding at trial. In *Bearpaw*, the necessity of a complete record was manifest in order to permit appellate determination of whether representation by trial counsel had been effective. Farbotnik concedes that the failure to report his trial did not deprive him of a fair trial. It seems highly unlikely that any review of portions of voir dire, opening statements, or closing arguments during the trial would materially aid the fact finding process. The primary purpose of reporting and transcription is to serve the appellate process. We do not perceive the rule articulated in *Bearpaw* is sufficiently significant with respect to fact finding at trial to warrant retrospective application of that rule.

In this instance, it is not necessary to consider the other features of the *Stovall* test, the extent of law enforcement reliance on the old standard, and the effect on the administration of justice. We note, however, that counsel for both the prosecution and defense frequently waived reporting of the portions of the record missing in Farbotnik's case in reliance upon past decisions of this court that did not demand a complete transcript. *See, e.g., Valdez v. State*, 727 P.2d 277 (Wyo.1986); *Spilman*, 633 P.2d 183.

■ Turning to other claims of error, we address Farbotnik's challenge of his conviction on the grounds of insufficiency of the evidence. At the time of this incident, the larceny statute provided as follows:

> Whoever feloniously steals, takes and carries, leads or drives away the personal goods of another of the value of one hundred dollars ($100.00) or upwards, is guilty of grand larceny, and shall be imprisoned in the penitentiary not more than ten (10) years. Wyo.Stat. § 6-7-301 (1977).

Felonious intent to steal is an essential element of this crime that the State has the responsibility of proving. *Repkie v. State*, 583 P.2d 1272 (Wyo.1978); *Neel v. State*, 452 P.2d 203, *reh'g denied*, 454 P.2d 241 (1969). The elements of the crime, which the State was required to prove beyond a reasonable doubt, are:

> (1) The crime occurred within the county of Laramie on or about March 31, 1983; and
>
> (2) That the defendant took and carried away,
>
> (3) With the intent to steal,
>
> (4) The personal goods of another,
>
> (5) Of the value of one hundred dollars or upwards.

Jury Instruction No. 6.

The standard of review for sufficiency of the evidence questions is well known: "We examine whether the evidence most favorable to the State is sufficient to infer reasonably that a statute was violated as charged." *Mondello v. State*, 843 P.2d 1152, 1160 (Wyo.1992); *Rathbun v. State*, 802 P.2d 881, 882 (Wyo.1990). As outlined in *Rathbun*, the process directs this court to defer to the role of the jury as a fact finder and assume the jurors believe only the evidence adverse to the defendant.

> We are aware the defendant's version argued for a finding of "not guilty" while the prosecutor's version argued for a finding of "guilty." Had the jury found the defendant's version credible, they would be bound to harbor reasonable doubt against the prosecutor's claim that the defendant was guilty. But they did not find the defendant's version credible and therefore found him guilty beyond a reasonable doubt.

*Rathbun*, 802 P.2d at 882.

■ As a procedural defense to this claim of error, the State argues that Farbotnik waived the issue of sufficiency of the evidence. Farbotnik moved for a judgment of acquittal at the close of the prosecution's evidence. Wyo.R.Crim.P. 30(a). After the motion was denied, Farbotnik presented his evidence refuting the presentation by the State. Farbotnik did not renew his motion, either at the close of all

the evidence or after the return of the verdict. Wyoming is in accord with federal courts which hold that, following the denial of a motion for acquittal, the introduction of evidence by a defendant, results in a waiver of the motion, and an appellate court cannot review the sufficiency of the evidence except for plain error. *Marshall v. State,* 646 P.2d 795 (Wyo.1982); *Neilson v. State,* 599 P.2d 1326 (Wyo.1979), *cert. denied,* 444 U.S. 1079, 100 S.Ct. 1031, 62 L.Ed.2d 763 (1980); 2 CHARLES A. WRIGHT, FEDERAL PRACTICE AND PROCEDURE: CRIMINAL § 463 (2d ed. 1982). We have recognized the difficult choice that this rule presents for those defendants who must decide whether to go forward with the production of evidence or stand on their belief of the insufficiency of the evidence of the prosecution. *Marshall* (Thomas, J., specially concurring).

■ The result, however, is that the failure to renew the motion demands that the question of sufficiency of the evidence be considered under the plain error doctrine. *Neilson.* Plain error demands a demonstration that a clear and unequivocal rule of law has been violated; a substantial right has been denied to the appellant; and, as a result, the appellant has been materially prejudiced. *Armstrong v. State,* 826 P.2d 1106 (Wyo.1992); *Hampton v. State,* 558 P.2d 504 (Wyo.1977).

■ Farbotnik argues that the State proved only an opportunity to commit larceny. He admits that he was present in BF's home on March 30–31, 1983, but he mistakenly continues to urge his version of the facts as more credible. He claims he had no reason to steal tools because, as a licensed mechanic, he had his own set. Farbotnik argues the number of missing items would have been too bulky to fit in his already-loaded van. He disputes eyewitness testimony that he drove away from BF's home rapidly on the date the theft was discovered. He contends instead that the length of his van caused a scraping sound leaving the driveway, and the witnesses confused this sound as indicating flight. Farbotnik contends others had ac-

cess to BF's apartment, and they may have stolen the items.

All of these contentions would require the court to weigh the evidence. That is not our function in testing a sufficiency of the evidence claim. *Mendicoa v. State,* 771 P.2d 1240 (Wyo.1989). We must assume the jury weighed the evidence before they accepted as true the evidence adverse to Farbotnik. *Mondello; Rathbun.*

Under the correct standard, the evidence presented at trial was ample to establish the elements of this offense beyond any reasonable doubt. The evidence demonstrated Farbotnik's presence at BF's apartment the same day the items were reported stolen and his previous familiarity with the apartment's contents and value thereof. Farbotnik confirmed the testimony of another witness that some items reported stolen, such as the television, were present in the apartment the night before the theft was reported. Another witness testified to seeing Farbotnik loading boxes taken from the apartment into his van on the day the theft was discovered. Farbotnik and SS were observed leaving the area "pretty quickly" in Farbotnik's van. SS stated, when confronted by BF, that she would take the "rap," and that the stolen property might "show up." Farbotnik left for California soon after the theft, creating a reasonable inference of flight for the jury. The State established the value of the stolen property as exceeding the statutory requirement. Given this evidence, Farbotnik's contentions are not adequate to demonstrate, under a plain error standard, that the evidence was insufficient.

■ We turn then to Farbotnik's claim of ineffective assistance of his trial counsel. In his pro se brief, Farbotnik argues that his attorney at trial failed to ask questions requested by Farbotnik; failed to object to questions relating to an in-court identification and sexual activities; and failed to call a witness Farbotnik desired. Our rule is that effective assistance of counsel is tested under a standard of reasonableness. *Frias,* 722 P.2d 135. We consider first, whether the performance of counsel was deficient and second, whether

that deficient performance prejudiced the accused. *Frias.* We recognize a strong presumption that "counsel rendered adequate and reasonable assistance making all decisions within the bounds of reasonable professional judgment." *Gist v. State,* 737 P.2d 336, 342 (Wyo.1987), *appeal after remand,* 766 P.2d 1149 (1988). The total context of the representation by counsel is reviewed to determine if the defendant was denied a fair trial. *Dickeson v. State,* 843 P.2d 606 (Wyo.1992).

Farbotnik argues his lawyer refused to ask the "ample cat and dog questions, dozens of them." This relates to the testimony that Farbotnik was observed loading several boxes from the apartment into his van on the day he left. Farbotnik contends two of those boxes contained Australian blue heeler puppies that he was transporting to his mother's pet store in California. During Farbotnik's testimony, his attorney developed the presence of the dogs and several cats in Farbotnik's van, the moving of the dogs into BF's apartment on March 30, 1983, and their location in the laundry room of the apartment where they were observed by a neighbor. Counsel also established, through Farbotnik's testimony, that the dogs were carried out the next day and returned to the van in boxes. This examination was sufficient to develop a plausible explanation for the jury of the contents of boxes carried from the apartment. Farbotnik fails to demonstrate any deficiency or prejudice with respect to this line of questioning or any failure to ask relevant questions.

Farbotnik then contends his attorney failed to object to questions Farbotnik considers improper. The prosecutor asked Farbotnik, during cross-examination, if he had ever sold mechanic's tools "in Greeley before." The question was based upon direct examination of Farbotnik about the potential resale value of used tools. We see no basis for an objection to the prosecutor's questions. Farbotnik argues at length that his attorney also should have objected to the in-court identification offered by the eyewitness who saw him removing boxes from BF's apartment. Farbotnik contends his lawyers should have

objected when the prosecutor did not address a question to the witness. The prosecutor stated: "It's the individual in the checkered shirt, opened at the collar?" Farbotnik's argument loses any meaning, however, when we note that the witness answered, "Excuse me?" The prosecutor then restated the question. The transcript reveals that this witness already had identified Farbotnik before the prosecutor's confirmatory question.

Finally, Farbotnik complains his counsel should have objected to questions about sexual activity made by the prosecutor during his cross-examination of SS. Those questions probed SS's feelings for BF, her anger with him after he allegedly sexually assaulted her, and her sexual habits. Counsel for SS did object three times, but was overruled because the questions were perceived as challenging the veracity of SS. None of the questions inquired into the relationship between SS and Farbotnik, and his counsel would have had no basis for objection.

■ Farbotnik also asserts his attorney should have called BR as a witness for the defense. According to Farbotnik, BR would have testified he rode to Salt Lake City on March 31, 1983 with Farbotnik, and the contents of Farbotnik's van consisted only of camping gear, Farbotnik's two tool boxes and the puppies. Farbotnik admits his defense counsel spoke with BR and declined to call him. A decision as to whether to call a particular witness is a matter of trial tactics that is within the discretion of reasonable representation. *Gist.* The overall performance of Farbotnik's trial attorney fell well within the range of professionally competent assistance. *Dickeson; Gist.* Consequently, we conclude the representation was reasonable and, therefore, there was no prejudice to Farbotnik.

■ In yet another challenge, Farbotnik repeats a claim of improper questioning during in-court identification by the eyewitness who saw Farbotnik removing boxes from BF's apartment. This is the same event that we discussed in connection with

the claim of improper questioning by the prosecutor. Farbotnik now recalls that, in making the identification, the witness pointed to an attorney seated near Farbotnik, not at Farbotnik. Farbotnik claims the prosecutor then pointed out Farbotnik. This argument is without merit. A record does not have to precisely align pointing angles that were observed by the jury. The witness began his identification testimony by noting the differences between Farbotnik's appearance the day the theft was reported and the day of trial. The identification was positive and was not diminished by the events that Farbotnik recites.

■ Farbotnik asserts a claim of jury bias that he bases upon a partial copy of what he claims to be a jury selection chart from the prosecutor's file. The chart lists the names of some jurors with two printed notations: "knows King" and "know N M." Farbotnik speculates from this "evidence" that the jurors were biased against him. Farbotnik does not explain how this conclusion could be reached and, since he fails to provide either cogent argument or authority, we do not consider this unsupported issue. We have made it clear cogent argument or authority is essential to appellate review. *Keene v. State*, 812 P.2d 147 (Wyo.1991); *Bland v. State*, 803 P.2d 856 (Wyo.1990).

We deal finally with Farbotnik's sentence. The sentencing judge required payment of restitution in the amount of $16,-945.50. Wyo.Stat. § 7–9–102 (1987 & Supp. 1991). The State concedes the restitution order was improper because, at the time of this crime, there was no statutory authorization for restitution. *See Attletweedt v. State*, 684 P.2d 812 (Wyo.1984); *Barnes v. State*, 670 P.2d 302 (Wyo.1983). Similarly, Farbotnik was required to pay $50 into the crime victims' compensation account. The State also admits the impropriety of this aspect of the judgment and sentence because, again, no statutory authorization for the crime victims' compensation account was present at the time the crime was committed. The provision for restitution and for payment to the crime victims' com-

pensation account, as divisible portions of Farbotnik's sentence, should be vacated based upon the State's concession.

■ Farbotnik also contends the district court erred in sentencing him to a longer term than SS. During sentencing, the district court noted that, in a desire for parity, a man's sentence would need to be longer than a woman's because of the absence of a "good time" credit program at the Women's Prison at the time SS was sentenced. We reject the philosophy that uniformity in sentencing is required, and trial judges are given a wide discretion in sentencing. *Duffy v. State*, 730 P.2d 754 (Wyo.1986). We ordered a partial remand during the pendency of this appeal to permit the district court to consider Farbotnik's argument that he was serving a longer sentence than his codefendant. The trial court did not provide relief for Farbotnik, and we perceive no abuse of discretion with respect to the sentence.

As modified by vacation of the requirement for payment of restitution and the payment into the crime victims' compensation account, the judgment and sentence is affirmed.

MACY, Chief Justice, specially concurring, with whom URBIGKIT, Justice (Retired), joins.

I agree that *Bearpaw v. State*, 803 P.2d 70 (Wyo.1990), should not be applied retroactively to this case due to its unique circumstances. I am troubled, however, by the suggestion in the majority opinion that a record "sufficiently complete for [appellate] counsel to assert several errors" satisfies the Due Process Clause of the Fourteenth Amendment to the United States Constitution or, for that matter, Article 1, Section 6 of the Wyoming Constitution.

The Due Process Clause requires that states provide a " 'means of affording adequate and effective appellate review to indigent [criminal] defendants.' " *Entsminger v. Iowa*, 386 U.S. 748, 751, 87 S.Ct. 1402, 1403, 18 L.Ed.2d 501 (1967) (quoting *Griffin v. Illinois*, 351 U.S. 12, 20, 76 S.Ct. 585, 591, 100 L.Ed. 891 (1956)). This requirement encompasses the right to have a tran-

script or the functional equivalent thereof, *Griffin*, 351 U.S. 12, 76 S.Ct. 585; the right to be represented by counsel on "the first appeal, granted as a matter of right," *Douglas v. California*, 372 U.S. 353, 356, 83 S.Ct. 814, 816, 9 L.Ed.2d 811 (1963); and the right to be provided with the effective assistance of counsel, *Evitts v. Lucey*, 469 U.S. 387, 105 S.Ct. 830, 83 L.Ed.2d 821 (1985).

I believe that anything short of a full transcript or its functional equivalent is incompatible with "adequate and effective appellate review." To suggest otherwise ignores both federal and local law as well as the basic tenets of effective appellate advocacy. *See Hardy v. United States*, 375 U.S. 277, 84 S.Ct. 424, 11 L.Ed.2d 331 (1964); *Bearpaw*, 803 P.2d 70; *State v. Thomas*, 38 Wyo. 72, 264 P. 1017 (1928); and *Richardson v. State*, 15 Wyo. 465, 89 P. 1027 (1907).